[Cite as *Lyrenmann v. Thomas*, 2026-Ohio-2648.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

MICHAEL LYRENMANN,　　　　　　　　　　:

　　Appellee,　　　　　　　　　　　　　　:　　　　CASE NO. CA2025-09-065

vs.　　　　　　　　　　　　　　　　　　:　　　　OPINION AND
　　　　　　　　　　　　　　　　　　　　　　　　　JUDGMENT ENTRY
WILLIAM A. THOMAS,　　　　　　　　　:　　　　7/13/2026

　　Appellant.　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　:

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2025 CVP 00386

Michael Lyrenmann, pro se.

William Thomas, pro se.

## **O P I N I O N**

**HENDRICKSON, J.**

{¶ 1} Appellant, William Thomas, appeals from the judgment of the Clermont County Court of Common Pleas awarding appellee, Michael Lyrenmann, attorney fees and expenses, after Thomas willfully engaged in frivolous conduct by requesting a civil

stalking protection order ("CSPO") against Lyrenmann. For the reasons discussed below, we affirm the trial court's decision but remand this matter to the trial court for the limited purpose of issuing a nunc pro tunc entry.

{¶ 2} On March 4, 2025, Thomas filed a petition for a CSPO against Lyrenmann. In his petition, Thomas alleged that Lyrenmann had been stalking, harassing, and monitoring Thomas through various methods, which had caused Thomas, as well as his associates, continuous mental distress. Thomas indicated he sought protection from Lyrenmann for himself, his adult daughter, and three other individuals unrelated to Thomas.

{¶ 3} The matter proceeded to a full hearing before the trial court. After considering the evidence presented at the hearing, the trial court issued a decision denying Thomas' petition for a CSPO. The trial court specifically found that Thomas

> failed to prove by a preponderance of the evidence that [Lyrenmann] has engaged in a pattern of conduct that caused [Thomas] to believe that [Lyrenmann] will cause physical harm or cause or has caused mental distress. [Thomas'] parties listed on the petition were not family or household members. Judgment is rendered in favor of [Lyrenmann].

No appeal was taken from the trial court's denial of Thomas' CSPO petition.

{¶ 4} Thereafter, on May 13, 2025, Lyrenmann moved the trial court, pursuant to Civ.R. 11 and R.C. 2323.51, for an award of attorney fees, court costs, and other reasonable expenses. On July 7, 2025, Lyrenmann filed a "Second Memorandum In Support Of Costs For Sanctions Against Petitioner For Frivolous Conduct." Thomas did not file a memorandum in opposition or otherwise respond to Lyrenmann's motions.

{¶ 5} The matter proceeded to a hearing on July 10, 2025, during which the trial court heard testimony from Lyrenmann and Thomas regarding Lyrenmann's motion. After considering the evidence produced at the hearing, the trial court issued a decision

granting the motion. In its decision, the trial court found that Thomas had engaged in willful violations of Civ.R. 11 and had engaged in frivolous conduct as defined in R.C. 2323.51(A)(2)(a)(i)-(iv). As such, the court awarded Lyrenmann the following: (1) reasonable attorney fees in the amount of $2,500 and (2) transportation costs in the amount of $164.08. In so doing, the court specifically ordered that "[j]udgment is rendered accordingly against the petitioner William Thomas and in favor of the respondent Michael Lyrenmann in the amount of $2,664.08."

{¶ 6} Thomas now appeals from the trial court's decision, raising four assignments of error for this court's review. For ease of discussion, we discuss Thomas' assignments of error out of order.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED BY FINDING THAT APPELLANT THOMAS ENGAGED IN FRIVOLOUS CONDUCT AS DEFINED IN R.C. 2323.51, R.C. 2923.51 AND VIOLATED CIV.R. 11.

{¶ 9} In his first assignment of error, Thomas challenges the trial court's finding that he engaged in willful violations of Civ.R. 11 and in frivolous conduct as defined in R.C. 2323.51.[1]

{¶ 10} Civ.R. 11 requires that any attorney or pro se party who has signed a pleading, motion, or other document certifies that the party has (1) read the document; (2) to the best of his or her knowledge, harbored good grounds to support the document; and (3) did not file the document for purposes of delay. *Jones v. Nichols*, 2012-Ohio-

---

1. Thomas also challenges the court's finding that he engaged in frivolous conduct as defined by R.C. 2923.51, which is a repealed statute concerning conspiracy and criminal gangs. After reviewing the trial court's decision in its entirety, it is evident that the court's reference to R.C. 2923.51, as opposed to R.C. 2323.51, is merely a typographical error by the court. As such, we will disregard the court's mistaken reference to R.C. 2923.51 and focus on the court's true finding that Thomas engaged in frivolous conduct as defined by R.C. 2323.51.

4344, ¶ 18 (12th Dist.). If any of the aforementioned requirements is "willfully" violated, the trial court may impose an "appropriate sanction." *Id*. The sanction may include an award to the opposing party of its expenses and reasonable attorney fees. *Id*. Civ.R. 11 employs a subjective bad faith standard, so it is the party's actual intent or belief that determines whether or not his conduct was willful. *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 2010-Ohio-5073, ¶ 8.

{¶ 11} R.C. 2323.51(B)(1) provides, in part, that a trial court may award court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with a civil action to a party adversely affected by frivolous conduct. "Conduct" is defined under R.C. 2323.51(A)(1) as "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action . . . or the taking of any other action in connection with a civil action[.]"

{¶ 12} Pursuant to R.C. 2323.51(A)(2)(a), conduct is frivolous if it satisfies any of the following:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
>
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information

- 4 -

or belief.

{¶ 13} Willfulness is not required under R.C. 2323.51, so the determination to be made is (1) whether the conduct is frivolous, and (2) the amount, if any, of court costs, reasonable attorney fees, and other reasonable expenses that should be awarded. *Smallwood v. State*, 2011-Ohio-3910, ¶ 20 (12th Dist.).

{¶ 14} Appellate review of a trial court's decision as to what constitutes frivolous conduct involves mixed questions of law and fact. *Lucchesi v. Fischer*, 2008-Ohio-5935, ¶ 4 (12th Dist.). A court's factual determinations are accorded a degree of deference and will not be disturbed on appeal if there is competent, credible evidence in the record to support them. *In re K.A.G.-M.*, 2009-Ohio-6239, ¶ 17 (12th Dist.), citing *Jackson v. Bellomy*, 2002-Ohio-6495, ¶ 39, 45 (10th Dist.). However, legal questions, such as whether a party's conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, requires a de novo review. *Slye v. London Police Dept.*, 2010-Ohio-2824, ¶ 25 (12th Dist.).

{¶ 15} In either case, appellate review of a trial court's decision to impose sanctions pursuant to Civ.R. 11 and R.C. 2323.51, and upon whom to impose such sanction, is an abuse of discretion standard. *Jones*, 2012-Ohio-4344, at ¶ 22 (12th Dist.), citing *Long v. Rhein*, 2003-Ohio-711, ¶ 20 (12th Dist.); *Smallwood*, 2011-Ohio-3910, at ¶ 20 (12th Dist.). An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} In this case, the court made several findings regarding Thomas' conduct throughout the underlying proceedings. Those findings include that Thomas called a number of witnesses that did not have personal knowledge regarding Thomas' claims,

such as representatives from Lyrenmann's employer; that Thomas included non-family or household members as victims on his petition; that Thomas left the courtroom before the court announced its decision; and that he failed to present any substantive evidence to prevail on his petition. For these reasons, the court concluded it could not discern any legitimate basis for Thomas' actions or conduct in the case, and therefore, found he had acted in violation of Civ.R. 11 and R.C. 2323.51(A)(2)(a)(i)-(iv).

{¶ 17} Thomas takes issue with several of the court's findings detailed above and claims on appeal that the court failed to "truly establish that [Thomas'] intentions were frivolous and not a means to protect himself, his minor daughter, and others listed on the petition that were consistently stalked and harassed by [Lyrenmann]." To that end, Thomas argues the testimony presented at the CSPO hearing demonstrated Lyrenmann's harassing conduct toward Thomas over a long period of time, and therefore, his CSPO petition had merit and was not frivolous.

{¶ 18} After our review, we find that the trial court did not err in awarding sanctions against Thomas for engaging in conduct in violation of Civ.R. 11 and R.C. 2323.51(A)(2). By challenging the court's findings regarding the CSPO proceedings, Thomas essentially seeks to relitigate the validity of his CSPO petition and asks us to consider whether his CSPO petition has merit. As noted above, Thomas did not appeal from the trial court's denial of the CSPO petition, despite its designation as a final appealable order pursuant to Civ.R. 65.1(G) and R.C. 2903.214(G)(1). As a result, Thomas has waived any argument challenging the trial court's denial of his CSPO petition. *See, e.g., Hill v. Ferguson*, 2022-Ohio-13, ¶ 13 (1st Dist.).

{¶ 19} Furthermore, although Thomas challenges many of the trial court's findings, and believes those findings are unsupported by the record, Thomas failed to provide a transcript of the full hearing on his CSPO petition. In absence of a written transcript of the

hearing, we have no record of the evidence presented to the trial court, and we cannot speculate what testimony was provided at that hearing. *Rathburn v. Watson*, 2020-Ohio-5213, ¶ 10 (2d Dist.). Without a record of the proceedings, it is impossible to assess the quality of the evidence the trial court heard, let alone evaluate the manner in which the trial court arrived at its decision on Lyrenmann's motion for sanctions and attorney fees. *See Lozada v. Lozada*, 2014-Ohio-5700, ¶ 26 (11th Dist.). Rather, we must presume regularity of the proceedings and that the evidence presented supports the trial court's findings. *Spicer v. Spicer*, 2006-Ohio-2402, ¶ 5 (12th Dist.).

{¶ 20} Regarding the findings we can review, based upon the record before us, Thomas has failed to provide any basis for reversal. First, Thomas disputes the court's finding that he included non-family and non-household members on his petition because he included his daughter on the petition. In so arguing, Thomas fails to address his inclusion of unrelated persons as victims on his CSPO petition. Pursuant to R.C. 2903.214(C), a person may seek relief via a CSPO petition for himself, or "on behalf of any other family or household member." According to his own petition, Thomas sought protection for three individuals who were not family or household members. Thus, the court did not err in noting Thomas's improper inclusion of these individuals, even if he named one proper family or household member, i.e., his daughter. *See Griga v. Dibenedetto*, 2012-Ohio-6097, ¶ 20 (1st Dist.) (the trial court erred in granting a CSPO on behalf of a person not included in the definition of household or family member).

{¶ 21} We similarly reject Thomas' attempt to use his subpoena to testify before a grand jury in Clermont County as evidence of the CSPO petition's validity. The record reveals Thomas did not present any evidence that the subpoena concerned the same allegations identified in the CSPO petition, nor does the subpoena, on its own, establish

that his claims against Lyrenmann below were legitimate.[2]

{¶ 22} Although Thomas ultimately disagrees with the trial court's finding that there was no legitimate basis for his CSPO petition against Lyrenmann, Thomas has not pointed to any specific evidence in the record to contest this finding. Based upon the limited record properly before this court, we cannot determine whether the court's findings that Thomas engaged in frivolous conduct and willfully violated Civ.R. 11 are unsupported by the record or if the evidence supporting the court's finding that Thomas had engaged in frivolous conduct under R.C. 2323.51(A)(2) is against the manifest weight of the evidence.[3] As such, we overrule Thomas' first assignment of error.

{¶ 23} Assignment of Error No. 3:

{¶ 24} THE TRIAL COURT ERRED BY FAILING TO RENDER AN UNBIASED AND CONSISTENT DECISION.

{¶ 25} In his third assignment of error, Thomas argues that, through its biased rulings, the trial court deprived him of a "fair and impartial adjudication." According to Thomas, the trial court exhibited inconsistent reasoning, applied standards unevenly between the parties, and demonstrated partiality, which ultimately deprived Thomas of due process.

{¶ 26} In support, Thomas first argues the trial court discounted his evidence and arguments while permitting Lyrenmann to avoid certain questions regarding a Facebook page Lyrenmann created named "Changed Clermont." Thomas alleges the court "cut

---

2. Thomas acknowledged during the hearing that, regarding the grand jury subpoena, he did not know anything aside from the fact that he had been asked to be a witness to a grand jury.

3. We note that civil stalking protection orders are intended to protect victims of menacing by stalking from further harassment, injury, and distress. We do not intend our decision in this matter to dissuade individuals from seeking civil stalking protection orders out of fear of potential sanctions in the event their petition is ultimately denied. In this matter, Thomas' failure to file a transcript of the full CSPO hearing was detrimental to this court's ability to review his claim on appeal.

[Thomas] off and failed to uphold [its] initial ruling stating that the question [Thomas] asked must be answered."

{¶ 27} After our review, including a careful review of the exchange described by Thomas above, there is no evidence of bias against Thomas or otherwise favorable treatment to Lyrenmann. Instead, the record reflects the trial court required Lyrenmann to answer Thomas' questions regarding the Changed Clermont page. Although reluctant, Lyrenmann confirmed he created the page, but denied it was intended to harass Thomas or his affiliates. As such, given that the court required Lyrenmann to respond to Thomas' question, and that Lyrenmann did, in fact, respond, Thomas cannot establish any prejudice from the trial court's conduct in this instance.

{¶ 28} Thomas next argues the trial court improperly sustained Lyrenmann's objections throughout Thomas' cross-examination. We disagree. The record reveals that, although the trial court sustained some of Lyrenmann's objections, it overruled others while stating that Thomas was permitted to ask questions. Although the court provided Thomas with wide latitude in his questioning, it did not allow Thomas to relitigate the merits of his CSPO petition or question Lyrenmann regarding his involvement in matters outside the scope of this case. As discussed above, Thomas had the opportunity to appeal from the trial court's denial of his CSPO petition and elected not to do so. The hearing on Lyrenmann's motion for sanctions was not an opportunity for Thomas to relitigate the points set forth in his CSPO petition. Instead, he was required to present evidence that he did not engage in behavior in violation of Civ.R. 11 and R.C. 2323.51(A)(2)(a)(i)-(iv).

{¶ 29} Therefore, finding no evidence that Thomas was deprived of a fair or impartial adjudication, or that the trial court exhibited any bias against Thomas in the underlying proceedings, we overrule Thomas's third assignment of error.

{¶ 30} Assignment of Error No. 4:

{¶ 31} THE TRIAL COURT ERRED BY FAILING TO CITE THE VIOLATION OF THE APPELLEE NOT PROPERLY SERVING THE APPELLANT WITH A SIGNED COPY OF THE MOTION FOR SANCTIONS WITH AN ITEMIZED BILL PRIOR TO THE HEARING.

{¶ 32} Thomas next argues the trial court erred when it allowed Lyrenmann to present, for the first time at the hearing, a new motion for sanctions and an itemized bill detailing his attorney's fees and costs. According to Thomas, Civ.R. 5 required Lyrenmann to serve Thomas with the motion and itemized bill in advance of the hearing. Because the court considered the motion and itemized bill without proper service, Thomas claims he was deprived of fair notice and the opportunity to respond and therefore, the resulting sanctions are improper.

{¶ 33} The record indicates that Lyrenmann filed his motion for sanctions against Thomas for frivolous conduct on May 13, 2025. At the end of his motion, Lyrenmann included a signed certificate of service, in which he certified that he mailed a copy of the motion and its accompanying exhibits to Thomas. The court set the matter for a hearing, with notice provided to Thomas. Thomas appeared at the hearing and presented testimony and exhibits in defense of Lyrenmann's motion. Near the end of hearing, Lyrenmann submitted a memorandum in support of his motion for sanctions and costs, in which he described the specific amount of the costs he sought to recover. In support of the memorandum, Lyrenmann attached invoices from Attorney Grenier and Attorney Taylor, as well as a detailed description of the transportation costs he incurred. In total, Lyrenmann sought $4,316.64 in attorney's fees and expenses, including transportation costs totaling $287.14, attorney fees for Attorney Greiner totaling $1,529.50, and attorney

- 10 -

fees for Attorney Taylor totaling $2,500.[4]

{¶ 34} The memorandum itself was not signed, and a copy was not provided to Thomas prior to the hearing. After Lyrenmann presented the documents to the court and Thomas, the following exchange occurred:

> MR. THOMAS: And Your Honor, for the record, this is the first time I'm seeing this. This was not filed with this section.
>
> THE COURT: Take time, look it over . . . We're in no hurry. I just want to hear everything you have to say about it.
>
> MR. THOMAS: Sure.
>
> MR. THOMAS: Your Honor, I don't know who John Greiner is for $1,529. As far as I know, Jesse Taylor was Mr. Lyrenmann's attorney. So it seems to me that Mr. Lyrenmann was contacting people, asking questions, is asking reimbursement possibly for that.
>
> . . .
>
> THE COURT: So to the extent that you disagree with that, I need to know your disagreement and why you feel that he's incorrect.
>
> MR. THOMAS: Well, Your Honor, I disagree with all of it because I don't believe it should be my responsibility to defend Mr. Lyrenmann on his actions. But second to that, there are fees in here that, in my opinion, I have - - it looks like he had this reviewed by other law firms. I don't know. I just know that Jesse James Taylor was his attorney. So the last invoice seems to me like it'd be the only one permitted to be submitted, but that's up to the Court.

Thomas continued on to argue that the fees incurred by Attorney Greiner pertained to a separate legal matter pending between Thomas and Lyrenmann, and that, because they

---

4. Regarding his calculation of the transportation costs, Lyrenmann stated he left work on several occasions (February 21, 2025, February 24, 2025, February 28, 2025, March 23, 2025, March 31, 2025, April 4, 2025, and April 14, 2025) to submit filings or attend hearings relating to the CSPO proceedings. To arrive at the $287.14, Lyrenmann calculated the round-trip mileage between his work and the trial court as 58.6 miles and multiplied each trip by the standard federal rate of $0.70 per mile. Notably, three of these trips occurred before Thomas filed the CSPO against Lyrenmann, and therefore, were excluded in the trial court's calculation and award.

- 11 -

do not concern the instant case, they should not be included.

{¶ 35} After taking the matter under advisement, the trial court issued its decision awarding Lyrenmann $2,500 for the services of Attorney Taylor and transportation expenses related to this case in the amount of $164.08. The court specifically noted that it did not find sufficient credible evidence to support the fee of $1,529.50 for the services of Attorney Greiner or mileage expenses in excess of the allowed.

{¶ 36} On appeal, Thomas claims he was prejudiced and deprived of fair notice and the opportunity to respond to Lyrenmann's exhibits introduced at the hearing.[5] However, based upon the above, the record reveals that the court provided Thomas an opportunity to review the exhibits during the hearing, took Thomas' concerns under advisement, and ultimately agreed with Thomas that some of Lyrenmann's fees and costs were unrelated to the instant case. We further note that Thomas did not request a continuance in order to further review and respond to Lyrenmann's memorandum. As such, Thomas has failed to demonstrate any prejudice that may have resulted from Lyrenmann's failure to provide advance notice of the documents provided at the hearing. Instead, it is evident Thomas had ample opportunity to review the documents at issue, the ability to contest various costs and fees included therein, and an opportunity to be heard by the court.

{¶ 37} Thomas' fourth assignment of error is overruled.

{¶ 38} Assignment of Error No. 2:

{¶ 39} THE TRIAL COURT ERRED BY FAILING TO RENDER A COMPETENT DECISION.

---

5. In support, Thomas cites to *Buehner v. Cheselka*, 2022-Ohio-2687 (8th Dist.), for the proposition that, "[t]he absence of proper service, including the lack of a certificate of service, constitutes procedural error and precludes the imposition of sanctions." After a review of that case, *Buehner* does not support the proposition as stated by Thomas and other language quoted by Thomas does not exist within the decision.

{¶ 40} In his remaining assignment of error, Thomas argues, in part, that the trial court rendered a conflicting decision where it, at one point, awarded attorney fees to Thomas, instead of Lyrenmann, and ordered mileage expenses in the amount of $287.14, instead of $164.08.[6]

{¶ 41} After our review, Thomas is correct that the court's September 3, 2025 judgment entry includes the mistakes identified by Thomas in his brief. That is, on page nine of its decision, the trial court "awards" fees and costs to "petitioner Thomas," including mileage fees in the amount of $287.14. However, notwithstanding these typographical mistakes, the trial court reiterated in the final paragraph of its decision the following:

> The court finds that sufficient credible evidence was presented as to the claim of $2,500 for the services of Attorney Jesse Taylor in order to make an award for that expense. Mileage is allowed for $164.08 for the transportation costs related to this case. The claim for Faruki-Greiner in the amount of $1,529.50 is not allowed in that it does not appear to have been incurred in this case. Judgment is rendered accordingly against the petitioner William Thomas and in favor of the respondent Michael Lyrenmann in the amount of $2,664.08.

Based upon this language, we disagree with Thomas that the trial court's decision implies that both Thomas and Lyrenmann are responsible for attorney fees and costs, that the decision shows a "lack of competence," or that it violates the Ohio Code of Judicial Conduct Rules. Instead, it is clear that the errors identified by Thomas on appeal are mere clerical errors within the court's decision.

{¶ 42} "A nunc pro tunc order may be issued by a trial court, as an exercise of its inherent power, to make its record speak the truth." *Capriolo v. Am. Constr. Group, L.L.C.*,

---

6. In this assignment of error, Thomas also highlights the trial court's finding that he included non-family and non-household members on his petition without acknowledging the inclusion of his daughter. As discussed above, the inclusion of a proper party, like his daughter, does not remedy his inclusion of improper parties, like the three non-family and non-household members identified on his CSPO petition.

2022-Ohio-4508, ¶ 22 (8th Dist.). That is, nunc pro tunc entries may be issued to correct a typographical or clerical error in an entry to accurately reflect what the court had actually decided. *See State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164 (1995) ("nunc pro tunc entries are limited in proper use to reflecting what the court actually decided"). Therefore, we remand the case for the limited purpose of allowing the trial court to issue a nunc pro tunc entry to correct the court's references, on page nine of its decision, to "petitioner Thomas" and the mileage expenses in the amount of $287.14. Instead, the court's decision should reflect what the court actually found, including that "respondent Lyrenmann" shall be awarded the designated fees and expenses, and that the mileage expenses totaled $164.08. The trial court's corrected entry will then reflect what the court actually decided after the hearing on Lyrenmann's motion and that judgment is rendered in favor of Lyrenmann in the amount of $2,664.08.

{¶ 43} Judgment affirmed. Case remanded for the limited purpose of issuing a nunc pro tunc entry in accordance with this opinion.

BYRNE, P.J., and M. POWELL, J., concur.

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed and remanded to the trial court for the limited purpose of issuing a nunc pro tunc entry to correct the clerical errors in the court's September 3, 2025 judgment entry, consistent with the above Opinion.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 100% to appellant.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robert A. Hendrickson, Judge*

*/s/ Mike Powell, Judge*